UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BRETT WOODYARD, an individual, | Case No. 3:21-cv-01247-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| PRESTIGE CARE, INC., a Washington corporation, and APRYL SCHNEIDER, an individual, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

Brett Woodyard ("Woodyard") sued Prestige Care, Inc. ("Prestige") and Apryl Schneider ("Schneider") (collectively, "Defendants"). After Defendants failed to answer or otherwise appear in a timely manner, the court granted Woodyard's motion for entry of default. Defendants now move for relief from the entry of default under FED. R. CIV. P. 55(c). The court has subject

matter jurisdiction under 28 U.S.C. §§ 1331–32 and 1367. Venue is proper under 28 U.S.C. § 1391(b)(2). For the reasons stated below, Defendants' motion is GRANTED.

*Background*

The relevant facts are undisputed. On August 20, 2021, Woodyard filed this lawsuit alleging unlawful termination of employment under 42 U.S.C. § 2000e-3(a) and OR. REV. STAT. §§ 659A.030(1)(f) and 659A.199. (Compl., ECF No. 1.) Woodyard served Prestige on August 25, 2021, and Schneider on August 29, 2021. (Affs. of Service upon Prestige Care, Inc., Apryl Schneider, ECF Nos. 6 and 7.) After Defendants failed to timely answer or make an appearance, Woodyard moved for an entry of default against Defendants on September 23, 2021. (*Id.*) The court granted the motion, and the clerk entered the default the same day. (Entry of Default, ECF No. 10.) On October 1, 2021, eight days after the entry of default, Defendants filed the instant motion requesting relief from the entry of default. (Defs.' Mot., ECF No. 13.)

Defendants attest their failure to appear was due to bureaucratic miscommunication. On August 30, 2021, Prestige's Director of Risk Management and Corporate Counsel, Jip Hubbard ("Hubbard") received notification of the lawsuit and informed Prestige's Insurer, Alliance Insurance Group ("Alliance"). Decl. of Jip Hubbard, ECF No. 15, ¶ 3) ("Hubbard Decl.") Alliance, in turn, indicated it would refer the summons to its specialty claims provider, Chubb, to appoint outside counsel. (*Id.* ¶ 4.) On September 2, 2021, Chubb contacted Caroline Guest ("Guest") of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree Deakins"), at which point Hubbard believed Guest had been retained to represent Prestige and she would make an appearance on their behalf. (*Id.* ¶¶ 5–6, 8.) Also on September 2, 2021, Defendants scheduled an initial call with Guest for September 20, 2021, the day Schneider was due to appear and five

Page 2 – OPINION AND ORDER

days after Prestige was due to appear.  (Defs.' Mot at 2.)   The call was rescheduled by Guest for September 27, 2021, and the court entered an order of default in the intervening period.  (*Id.*)

Sometime before the scheduled September 27 call and unbeknownst to Hubbard or Alliance, a partner at Ogletree Deakins was in contact with Prestige's general counsel, Ryan Delmarter, regarding their representation.  (Hubbard Decl. ¶ 8.)   On September 27, 2021, Guest emailed Holly Bowers ("Bowers"), Senior Claims Specialist for Chubb, stating there was some question as to whether Ogletree Deakins would represent Prestige.  (*Id.* ¶¶ 5, 9.)   This email thread was subsequently shared with Hubbard, and this was Hubbard's first indication Prestige might not have engaged Guest as counsel.  (*Id.* ¶ 9.)

Hubbard attests he first learned of the default on September 28, 2021, when, at 3:49 a.m., Bowers emailed Hubbard expressing concern after noticing the entry of default in PACER.  (*Id.* ¶ 10.)  The same day, Hubbard confirmed Guest would not be representing Prestige, and that afternoon Hubbard retained Katie Eichner of Lindsay Hart, LLP.  (Defs.' Mot. at 3.)   Eichner contacted Woodyard's attorney the same afternoon to schedule a LR 7-1 conference.  (*Id.*)   That conference was scheduled for and took place on September 30, 2021.  (*Id.*)  Defendants filed the instant motion the next day.  (*Id.*)

## Legal Standard

A court may set aside an entry of default for good cause.  FED. R. CIV. P. 55(c).   Though entry of default is mandatory, the decision to set aside default is discretionary.  *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004) (District court's decision to deny motion to set aside default is reviewed for clear error and abuse of discretion). To determine good cause, courts consider whether the plaintiff would be prejudiced by setting

aside default, whether the defendant has a meritorious defense, and whether the defendant was culpable in the default. *Id.; Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984). The court may decline to set aside default on the basis of any of these factors. *Franchise Holding II,* 375 F.3d at 925.

The Ninth Circuit has repeatedly emphasized its strong preference for decisions on the merits over judgment by default. *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle,* 615 F.3d 1085, 1091 (9th Cir. 2010). Though the Ninth Circuit has adopted the three-factor test as a guide to deciding a motion to set aside default judgment, the preference for allowing cases to be decided through the normal course of litigation is the lens through which the factors are examined. *See Id.* ("Judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits."). The three-factor test is applied more leniently to entries of default than to default judgment. *Id.* at 1091 n.1.

*Discussion*

Woodyard argues the court should deny the motion on the grounds that Defendants do not have a meritorious defense and that they were culpable in the default. (Pl.'s Resp., ECF No. 17.) Woodyard does not argue he would be prejudiced were the court to set aside default. In any event, as the case is very young—the instant motion was filed just six weeks after the complaint—the court finds Woodyard would not be prejudiced by setting aside default and litigating the case on its merits.

I.     Merits of Defense

For purposes of determining whether to set aside default, a defense is meritorious if the Defendant has alleged sufficient facts that, taken as true, would constitute a defense. *United*

Page 4 – OPINION AND ORDER

*States v. Aguilar*, 782 F.3d 1101, 1107 (9th Cir. 2015). The defendant's burden to meet this standard is minimal. *Mesle* 615 F.3d at 1094. The court does not evaluate the plausibility of the facts, but instead leaves that determination for the litigation process. *Id.*

Defendants allege that the cause of action in this case—the termination of Woodyard's employment—was due not to discrimination or retaliation but due to "poor performance and leadership, including failure to follow CDC guidelines during [the SARS-CoV-2 pandemic]." (Hubbard Decl. at 3.) In support of this claim, Defendants offer a letter ("BOLI Letter"), filed with the Oregon Bureau of Labor and Industries, explaining the factual basis for their position. (*Id.* at 5.) The BOLI Letter describes complaints over Woodyard's performance, filed against Woodyard by fellow employees, which led Prestige to terminate Woodyard's employment following an investigation. (*Id.*)

Woodyard responds that the facts alleged in the BOLI Letter are insufficient to mount a defense, and that, even if true, they "do not support the conclusion that plaintiff's termination was anything but pretextual." (Pl.'s Resp. at 9.) Woodyard argues the BOLI Letter does not address the central allegation that he was "directed [to] do something to 'mitigate the speaking of Spanish in the community,'" and that the letter does not show sufficient cause for terminating Woodyard. (*Id.* at 10.) Woodyard notes the BOLI Civil Rights Division rejected Defendants' position and found substantial evidence of discrimination. (*Id.*) Woodyard argues Defendants' motion does not support an inference that Defendants have a plausible defense. (*Id.*) The court disagrees.

Defendants allege facts which, if true, suggest Woodyard was terminated for cause and his termination was not prompted by retaliation or discrimination. Defendants' letter is not a "general denial without facts to support it," but instead proposes a lawful basis for Woodyard's termination.

*Franchise Holding II*, 375 F.3d at 926; *see also Univ. of Texas Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 358 (2013) (noting in passing that termination for poor performance is a lawful action). Furthermore, though Defendants do not raise the point, the court notes Defendants filed this motion just three days after counsel was retained and less than 36 hours after the LR 7-1 conference, further evidence of a lack of actual prejudice to Woodyard from Defendants' delay.

Defendants have shown they have more than a speculative defense. Woodyard's arguments against that defense go to the merits of the case, which the court cannot and should not resolve at this stage. The normal litigation process is the appropriate forum for those arguments.

II.  Culpability of Defendant

When determining culpability, legally sophisticated parties are held to a stricter standard than unrepresented parties. *Mesle*, 615 F.3d at 1093. A party is legally sophisticated if it has experience with litigation or has consulted with lawyers in response to the lawsuit. *Ramirez v. Hansen*, No. 1:21-CV-0324-CL, 2021 WL 5364188, at *2 (D. Or. Nov. 17, 2021). A legally sophisticated party may be culpable if it fails to answer or appear after receiving actual or constructive notice of the lawsuit. *Id.* Determination of culpability is within the court's discretion. *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1112 (9th Cir. 2011) (rejecting the argument that a finding of culpability constrains the district court's discretion to set aside default).

The court agrees Defendants are legally sophisticated for purposes of this motion. Woodyard asserts Prestige has at least two in-house attorneys, "one of which served as the 'direct contact for management of this litigation' and another of which was in direct communication with

Page 6 – OPINION AND ORDER

outside counsel." On this basis, the court would be within the scope of its discretion to deny Defendants' motion. The court declines to do so, however.

The court is persuaded Defendants' conduct was not willful, but instead resulted from miscommunication within Prestige's corporate structure. Hubbard attests Prestige informed Alliance of the lawsuit on August 30, 2021, five business days after it was served and the day after Schneider was served. (Hubbard Decl. ¶ 5.) Hubbard further attests that as of September 2, 2021, nearly two weeks prior to the deadline for Prestige to respond or appear, he believed in good faith Prestige was represented by outside counsel and an appearance was being made. (*Id.* ¶¶ 6, 8.) The court finds on these facts excusable neglect based on a good faith belief that the lawsuit was in the hands of competent outside counsel.

Defendants' attestations further show that once they were made aware of the error, they acted swiftly to correct the situation. Hubbard learned of his mistake in the early morning of September 28, 2021. (Hubbard Decl. ¶ 10.) By that afternoon Hubbard had retained outside counsel, who contacted Woodyard's counsel the same day. (Eichner Decl. ECF No. 14, ¶¶ 2–3.) Prestige's counsel made an appearance the following day (Notice of Appearance, ECF No. 11.) The time elapsed from the moment Hubbard learned of the default to the time Defendants had appeared, scheduled and conducted a LR 7-1 conference, and filed the instant motion was just over three days, a *de minimis* delay at most.

Given the Ninth Circuit's strong preference for deciding cases on the merits, the court finds that the interests of justice are best served by allowing the case to be litigated.

\ \ \ \ \

\ \ \ \ \

Page 7 – OPINION AND ORDER

*Conclusion*

For the reasons stated, Defendants' motion for relief from default, ECF No. 13, is GRANTED and the entry of default, ECF No. 10, is VACATED. Defendants are directed to respond to the complaint no later than February 7, 2022.

DATED this 27th day of January, 2022.

_____
JOHN V. ACOSTA
United States Magistrate Judge